Good morning, Your Honors. May it please the Court, I'd like to reserve a couple of minutes to rebut. It is our position that the case of United States Park v. Park is irreconcilable with the Supreme Court's decision in DeKalb and ought to be revisited and ultimately overruled. If it stands, if Park stands as is presently constituted, the following offenses categorically would be crimes of violence under the residual clause, entering a friend's apartment with the intent to write a bad check, entry with intent to commit stock fraud, entry with the intent to commit some type of con or fraud against the owner of the premises. And these aren't my crazy hypotheticals. These are actual decisions issued by the California Courts of Appeal and in one case the Supreme Court. And I cannot imagine how the conduct I've just described to you could possibly constitute a crime that poses a serious risk of physical injury to someone, which is one of the steps of the residual clause, or is close enough to the generic definition or enumerated offenses within the residual clause to categorically be a crime of violence. The Supreme Court made very, very clear in United States v. James that the approach to residual clause cases is categorical. And it reiterated not only in that case, but in subsequent cases, including DeKalb, that this Court's focus or the sentencing court's focus has got to be on the elements of the offense to determine whether or not it is a good fit within a residual clause. In fact, it was James that said that anybody challenging the inclusion of an offense within a crime of violence definition would have to show that it would be applied not just possibly, but probably by a State court to some type of crime or conduct outside that definition. And that is precisely the type of situation that I just described to you at the beginning of my statement. You have the Supreme Court and you have the courts of California on the appellate level applying this conduct to the most benign conduct you can imagine, just the intent to commit some type of felony, not a violent one, not anything that would cause any type of confrontation, but any felony. And that is the basis for us believing that the Park decision at least on one level is incorrectly decided. Robertson, I mean, there are you certainly know that there are some judges on our court who agree with you completely. There's just a division within the court as to whether Park's, I think there's another case, isn't it, Meyer? Correct. But I guess I'm still, I read through the briefs, looked again at the camps. I've read it 50 times. What's the legal principle that was established in that case that you think that you can't rule Park's as a three-judge panel? That's where I'm stuck. I see. I see. And I believe that reconcilable, at least on Miller v. Gammey, is what you can look to to determine, you know, their analysis and your analysis, is it a close enough fit or can you reconcile them at all? And I believe that's the appropriate test. Right. The reason the camp says this, the camp says California's first-degree burglary is never a crime of violence for purposes of the residual clause because it does not have the element. It did not deal with the residual clause, right? I'm sorry. It's never a crime of violence for the enumerated offenses because it did not match the generic burglary definition. My apologies. I'm sorry. And it's for the ACCA and by extension to 4b.1.2 because the cases, including the circuit, always apply the ACC analysis. And the reason it said that is because it lacks the element of unlawful entry, which that Court and a number of other courts have consistently ruled is the one thing that really kind of poses the risk of some type of physical injury or some type of confidential eventuating. You have Park saying, on the other hand, that, no, California first-degree burglary is always a crime of violence under the residual clause. But so why, then, would Justice Kagan have dropped that footnote saying, hey, fortunately or unfortunately, we don't even have to look at the residual clause because the government has forfeited or waived that argument if it were so clear, right, that the analysis that she laid out with respect to the enumerated offenses also applied to the residual clause? Why wouldn't why would there be the need for that footnote? That's what I that's, to me, the key problem or the key hurdle that you have to overcome in order for us to be persuaded that we can do something with Park. Okay. Well, two things with response to that, Judge Rockford. First, at least as I understand the Supreme Court's jurisprudential reasoning, they don't want to reach issues that aren't they don't want to reach issues they don't have to reach. You know, they may want to save it for another day. And the other thing that I think the Court can look at in terms of that footnote is she put Meyer clearly in her sights, if not the majority's sights, by saying, wait a minute, on one hand, you're saying this, I mean, here's Judge Kaczynski's dissent, and you're not really hearing it. That's what I'm saying. Here's the train wreck. You know, I can't give you her insight into why she may have done that. But at least in the jurisprudential reason, they often leave questions open. I don't think the Court ought to read that as a signal that, well, we don't think that this would apply in the residual clause case because the government forfeited the argument. I know. I'm with you. And listen, I'm sympathetic to your argument, believe me. But I guess what my problem is, how can we say that what the Court did in DeKamps is clearly irreconcilable with Parks when the Court itself basically said, look, we're not touching that. It's still open. Okay. Well, here's some additional facts and law that I think the Court ought to consider. One thing that Parks did not consider were some of the issues that we raised before the district court. One is that there are statistics, which is one of the main things that James Court brought up. We were never confronted with statistics, or we never presented with statistics, to really kind of make a decision as to whether burglary is something that always results in violence. And we gave the district court not only the statistics cited in the Sykes case, which found, I believe, it was like 3.2 percent out of, you know, three out of every 100 burglaries involved some kind of injury. So we have 97 percent of burglaries that do not involve injury. That was presented to the district court. We also supplied a paper kind of analyzing, a law review article analyzing the Sykes statistics and actually narrowing it even further because they thought Sykes might have overstated the risk. So you're being presented now with a different scenario than was present before the Park Court. You also have California's own authority, and this is, you know, again, going back to James, even though it said focus on the elements, they did take a gander at the way that State courts treated the offensive issue. And here you have California putting it in very benign conduct, but you also have this California statute that makes a real distinction between generic first-degree burglary and what we call aggravated first-degree burglary. And it is the aggravated first-degree burglary with its elements, that is, having somebody on the premises, a non-accomplice, or having great bodily injury. Those are the elements that I believe, if they had been presented perhaps to the court in DeKalb, would have made them reach a residual-clause issue, but that issue really never came up. That is where I think the distinction is, because you have a very clear statement from the California legislature, one, in the People v. Isis case, which we cite in page 6 of our brief, that California first-degree burglary is not a crime of violence without more. And then, two, you look at the legislative treatment of the aggravated first-degree California burglary, and that's where the more is. That is where the very elements, that is where the very conduct that would potentially give rise to inclusion within the residual-clause as a crime of violence is located. So between the risk rationale of Taylor, James, Terrell, Meyer, and that whole line of cases that focused on the type of California burglary that is present in this record, and the way that the California legislature has treated it, and the way the California courts of appeal has treated it, I do believe you have a sufficient record now to revisit that issue and to distinguish Park and its cognate cases and rule otherwise. I see I'm down to about a minute and 40 seconds. I'd like to reserve a minute. Robertson, Jr. Good morning. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. Roberts, Jr. Ms. Chan, before you get too far into your argument, let me say to you as a warning that if you give a nonresponsive or evasive answer, I'm going to send a letter to the U.S. attorney suggesting criminal prosecution. Okay. No, take it. That's a joke, okay? Okay. Thank you, Your Honor. I'm not sure everybody in the courtroom understands the joke, but you do. I understand the joke, Your Honor. I'm not sure I'll laugh as heartily as I should at it, but I understand the joke. Your Honors, Park held that California first-degree burglary is a felony that categorically involves conduct that presents a serious potential risk of physical injury to another. And the key here is that the residual clause is what was at issue at Park. It was not at issue in Descamps. It was not at issue in any other intervening authority since Park. And the reason it's important is that residual clause isn't the same kind of analysis that is presented by a comparison between a state crime and a generic offense that has set elements, a comparison of set elements. It is an analysis that, as the court, the Supreme Court stated in James, includes inherently probabilistic issues because of the way it is worded. It is worded as serious potential risk, not just a risk, but the potential of a risk. And the court, I think, correctly found in Park that when you have California first-degree burglary, which is something that requires somebody to enter, actually enter, not simply try to enter, but actually enter, somebody's dwelling, an inhabited dwelling, that is, a place, a structure, or a vessel that is somebody's home, that you have inherent in that the residuals. But without the aggravators applying, isn't it going to be, by definition, an entry into a home that's not, where nobody else is there other than the perpetrators? No, because under 667.5, that has to be charged and proved. So that, you know, it may not be that it's charged and proved. It may still be a factor there. For example, as you know, there are many charging decisions. But I'm saying that the un-aggravated, or the, I don't know how to say it, un-aggravated or un-enhanced offense, the jury is not going to have to find, when it convicts, that there was anybody there. That's right. But it's a place where somebody normally lives, and they could happen upon the person. They could come home. They could, and as the James Court held, and I think James is really key here, because it is the case, the Supreme Court case, that establishes the ordinary case standard. It's at 208 in the Supreme Court opinion where it says specifically that the standard is whether, in the ordinary case, the conduct encompassed by the elements presents a serious potential risk. That case said that the face-to-face confrontation, that is at issue, and that is the concern for burglary, is a confrontation with not only the inhabitants who are there, but the inhabitants who may come back, or a bypasser, a neighbor who's concerned that somebody strange is invading somebody's property, or police officers who are coming in to intervene and to deal with this. I mean, the home is a very important element to this crime. It is somebody's home. We're not talking about just some abandoned structure somewhere in a field, which James actually said, even in that case, and that's why it set the ordinary case standard, that case doesn't have a realistic probability of a face-to-face confrontation. When we're talking about somebody's home, this is the inner sanctum. This is the most sort of private refuge that a person has. If a person is surprised by somebody in their home, we expect that person will maybe take actions that he wouldn't take if he were accosted in public, you know, in Civic Center, for example, where there are other people who are there to intervene. This is a person's home where their closest, most intimate people are, their private objects are. It's something that's recognized certainly in our Fourth Amendment jurisprudence. And so I think there's a very strong case for why California first-degree burglary was correctly decided in Park to meet the residual clause. And where, if it's their home, they may well have a firearm. Exactly. All sorts of things, exactly, Your Honor. And Park specifically addressed the lack of unlawful entry point that my colleague referenced, which is that that's not key to it at all. What's key to the danger of a face-to-face confrontation with burglary isn't the fact that you have to break into somebody's abode, but the fact that you're entering into it and you don't belong there, and you do it so with the intent to harm somebody or to commit a crime against somebody, whether it's larceny or it's a felony. And, yes, I wanted to address quickly my colleague's points about these cases where you've entered with the intent to write a bad check or you've, to commit fraud or something against a person. That is still happening in somebody's home. This isn't something that's happening on the street. So if somebody comes into your home, yes. And can the entry be completely lawful? So this is an interesting point, Your Honor, because it doesn't have to be unlawful in the sense of the Federal generic offense, but it is unlawful in the sense that it's unauthorized. And as it's a more unauthorized, you said? It's unauthorized in the sense that it's so I'm not sure if I'm explaining this question. I thought the jury could find that you could be invited in, but have the intent. Is that wrong? That's what I'm trying to figure out. You could be invited in, but if the person has come in with the intent at the time of committing a crime against the property or the person, that's considered under California law to be unauthorized in the sense that you were authorized to come in for a different legitimate purpose, not for the purpose of committing a crime. If you've been allowed in to commit a crime against the property, then that isn't considered burglary. Then you haven't met one of the elements. So let me work this through. So someone's authorized to come in to make a purchase. The person coming in at the time he comes in has the intent of writing a bad check, writes a bad check. Does that qualify as a burglary under California law? Yes, I believe it does. And so what's the threat of violence if I come into your house intending to write a bad check? I write you a bad check for the requested amount. I take away the purchase. You have the bad check. So where's the threat of violence? When you discover it's a bad check, you might want to come after me. Right. But not to – I mean, it's going to take you a while to figure that out. So where's the threat of violence? There are two points. I mean, first, the – it doesn't have to be a realistic threat of violence in all cases. That's what the ordinary case standard set out in James and reiterated in Park says. But the second issue is that the sort of – the theory behind what you've just said is that you won't be apprehended in the middle of your crime. That is, you'll get away with your crime successfully. You'll be able to complete it, and maybe it'll be detected later on. But that's not always the case. A burglar who invades a house, commits a house residential burglary, might hope that nobody will come home. And maybe he'll be right or she'll be right. But if he isn't or she isn't, then that's where the risk of face-to-face confrontation comes in. And it simply has to be a serious potential risk, not an actualized risk. So I get that, but I'm trying to figure out whether the crime of burglary in California that is accomplished by my coming in with the intent – with your permission, but my coming in with the intent of writing a bad check. So long as that's a felony. Yeah, yeah. So am I supposed to make some sort of seat-of-the-pants judgment as to how often that is a – that crime of burglary happens in California, and if it doesn't happen very often, then this is a crime of violence? Well, two points. The California courts have said that the usual situation of burglary – they've already talked about that – is not a situation where you have something where there's no threat of violence. The burglary laws were created to address risks of face-to-face confrontation and physical injury. They're not actually aimed at the actual end crime. They're not – there are other laws that deal with theft or writing bad checks. Burglary has to deal with entering somebody's vote, first-degree burglary, that is. And the second thing I want to point out – But California has such a broad definition of burglary that coming in with the intent to write a bad check is also burglary. I understand that the notion that the legislators might have had of the typical burglar is not the bad-check guy. Right. Well, and that's true, but I think the issue is that you're entering somebody's house to commit a crime against them or their property, and that's where the risk is, if you are found out in the context of that. Right. But it's fanciful to suggest that there's a risk of violence when somebody comes in to write a bad check. That just strikes me as not realistic. So I think the only way you can get around it is to say, but that is such an unusual version of burglary under California law that it doesn't count under James. That's right. I think it doesn't count under James. It doesn't count under Park. And also, it's important to remember that statistics are not central to the analysis. Even in Sykes, which looked at statistics, it only used statistics as a backup to the common-sense analysis of comparing it to the baseline burglary offense. Here, there's no question that the baseline offense that's set out, the enumerated offense, is burglary of a dwelling. This is, meets both of the prongs of Park in being a situation where it's essentially the same thing. It's California, first-degree burglary, presents a serious potential risk of physical injury to another, and it is roughly similar to the enumerated offense. Okay. Thank you. Thank you, Your Honor. I have to say, I detected no non-responsive or evasive answer. I'm glad that's true. I never have the intent, Your Honor, even if I ever do. I'm glad she has a sense of humor. I'm frankly a little worried you're going to give me a warning, too. Let me respond to two points briefly, Your Honor. First, the Court should note, and you'll find this case on page 6 of our reply, that entry under California law does not require a person to successfully actually get his entire body or her entire body into the premises. A tool, a hand through the window, is sufficient. That completes the crime. Second, the dwelling itself doesn't even need to be inhabited. It needs to be inhabitable, and that's under the Burkitt case, which is on page 9 of our brief. So I think the Court's insight, at least, is correct, because of the way that California has defined burglary, that you end up with a number of different scenarios, and not just hypothetical ones, but actual case law, which under Park actually would constitute crimes of violence. The Czech case would constitute a crime of violence. The Kahn case would constitute a crime of violence. The fraud case would constitute a crime of violence, and categorically so. But this is the major point that I wanted to reach and that I didn't get a chance to reach in my opening, is that part of the help here comes from what I believe is the Supreme Court's case in Moncrief. You are to presume that the conviction rested upon nothing more than the least acts necessary to constitute the elements of the offense. That is the kind of minimizing and categorizing role that this Court is constrained to follow under existing precedent, and with that in mind, I don't believe that the Court could find that this particular conviction constitutes a crime of violence. I do believe that with the statistics and the way that the California courts and the legislature, excuse me, have treated burglary, that you have a sufficient basis to revisit Park and overrule it, and if you don't, I would invite you to make the on-bound call. Okay. Thank you. Thank you very much. The United States v. Calamart is submitted for decision. Nice arguments on both sides. Thank you.
judges: Duffy, Fletcher, Watford